So Council, you now know all you need to know about criminal trials and apartment complex regulation and Napster and Twitter, etc. So we're going to see how that informs the arguments you're going to put forth. That said, you may approach Ms. Andrews. Just teasing, just teasing. May it please the Court. As you're aware, this is a lawsuit between two insurance companies. My client, Westport Insurance, is the primary insurance company, and appellees, Penn, are the excess insurance company, and both of the parties in this suit are trying to recover for a portion of a judgment they paid against their Mutual Insured Insurance Alliance, or MTA. Westport paid $15 million of the judgment, even though it only had a $5 million primary policy. $7.7 million of those dollars were excess liability that should have been covered under the excess policy. Penn paid only less than $380,000 on the judgment, even though the insured had a $15 million excess policy with Penn. What's unique about this case is that both of the parties stand in the insured's shoes for purposes of their own claim, but not the other party's claim. So the breach of contract claim that Westport brings here is actually the insured's claim against Penn for failing to honor its obligations to indemnify and defend under the excess policy. For purposes of the breach of contract claim, Westport stands in the shoes of the insured, and Penn is itself. Conversely, for Penn's claim for judgment and gets to assert the insured's rights. So you are agreeing under Texas law, and I agree with you, that an excess carrier is an equitable subrogee for purposes of a stowers claim? For purposes of a stowers claim, up to the amount they paid. So a subrogation under Texas law is dependent on the dollars paid. So if I paid less than $380,000 of the judgment, I can assert a stowers claim up to that amount, but I have no stowers rights beyond that amount, because what makes me a subrogee is the fact that I paid on behalf of the insured. So the $7.7 million that we paid, we stand in the insured's shoes, and they have no stowers rights to assert. So am I oversimplifying if I say this record shows both insurance carriers, the two litigating against each other, both infringed. In other words, there's a breach from Penn, and there was negligence shown by your claim. And if you think of it that way, at least the outcome seems to either have had no impact or have mooted it the way the district court appears to have thought. In as much as five years before Penn breached, there's negligence when your client refused to settle reasonably. Now you dispute that. That's a separate issue. But let's assume for a moment that we leave that jury verdict intact. Then there never would have been damages. You'd be on the hook. It's effectively removing the policy limits. You're on the hook for the whole thing. That's sort of, I think, what the district court thought the sequencing was. I think that's an accurate reflection of what the district court thought. I think it's not a legally sound result for a couple of reasons. The first reason is that negligence, including stowers negligence, is not a defense to breach a contract. That rule includes negligence that purportedly caused the damages. It includes doctrines like contributory negligence, proportionate responsibility, comparative fault. All of those are arguments that, hey, someone else And it seems like everyone retreated. I don't mean, I am interrupting, so I apologize. But I think, I'm convinced that you're probably right on that. And there was discussion about it being a defense. But then after the trial and the verdict, it shifted to, well, there's an offset here. So it's, right, causation issue. If I could, yes, your honor. That is exactly how it shifted, except instead of offset, they said there's no damages. Our breach caused no damages. There's three reasons that argument fails. First, the record. So there's a summary judgment ruling and it hasn't been appealed. That summary judgment ruling was that they had a duty to pay out under the policy and they didn't pay. So there's no way to argue that the insured wasn't damaged because the insured didn't receive payments that it was entitled to receive under the contract. Now the fact that Westport stepped in and paid those damages on behalf of the insured doesn't mean that the insured's claim or damages disappear. What it means is the claim of damages transferred to Westport, who is the subrogee of the insured, and can recover those damages in the insured's name. Just exactly like Penn's Sowers claim works here. The insured didn't pay the Sowers damages they're claiming. The claim was transferred to Westport when Westport paid them. So am I right that the short, sort of the colloquial phrase of that is pay and chase? That is a phrase that they used in their... But is that essentially what you're arguing? They had to pay... You have to... And then what reason would they not have then recovered? If they had paid, they would recover if they ultimately were successful in their Sowers claim. Okay. It's not paying that causes them problems. It's breaching the contract that causes them problems, that causes them to be liable for breach of contract. That's your first point. You had several arguments against the sequence. Go ahead. Yes, Your Honor. Thank you. The second one is the distinction they're drawing between the argument that negligence is not a defense to breach of contract and the argument that there are no damages is a distinction without meaning. Because as we talked about, the rule that negligence is not a defense to breach of contract includes negligence that is, in fact, causally related to the damages in issue, right? If you're going to say contributory negligence, you're saying, hey, someone else's, or comparative fault, you're saying, hey, someone else's fault caused these damages so I shouldn't be liable for them. None of those doctrines apply to breach of contract in Texas. They apply to negligence claims, to other kinds of torts, not breach of contract. Because if you have a contractual obligation to pay, you have to honor it. The third problem is that Penn waived this issue. So in the trial court, and one of Penn's big theories in the trial court in here is this is mostly a Sowers case, right? But this started as a breach of contract claim. And the only reason that the only issue that was tried to the jury was Sowers is because all of the breach of contract elements were resolved before trial. First we get summary judgment holding that there was, as a matter of law, a breach. That's not challenged here. And then the court realigns the parties to make Penn the plaintiff and us the defendant because the only issue left for us to prove is what our damages were. And then, before trial, the court says, hey, the only issue left to prove on breach of contract is what are the damages. Couldn't you stipulate to those? Isn't it clear how much was paid? And Penn says yes, and we say yes, and we stipulate to the damages. So that there's no other issue to go to the jury besides Sowers. So you can't come back now and say, hey, there are no damages caused by my breach, even though I stipulated to the damages before the jury trial. If I could turn now. Yeah, well, I mean, I guess it's still a little sequentially, am I not correct, that if the jury verdict stands, there were two different moments, two demands that were made by Highport that predated the excess even knowing about this underlying lawsuit. And so if the jury verdict stands, your negligence would have meant that they'd never be on the line for any excess verdict. Yes, Your Honor. And that is a but-for causation, but not a proximate causation. But that is always going to be the case in these kinds of policies, where it's E&O policies. There's always going to be someone else's fault who caused the judgment. Someone else's fault is the reason you have to pay. Whatever triggers your contractual duty is not a defense to your contractual duty. You still have to honor your contractual duty, even if you wouldn't have owed it, if someone else had done something better earlier in the process. Mm-hm. I will turn to our Stowers issues now, unless anyone has any further questions on the breach of contract claim. So we raise two challenges to the Stowers judgment. The first is a no-duty argument. There are certain legal prerequisites that have to be satisfied under Texas law before a Stowers duty is triggered in the first place. The three that are at issue in this case are a full release of the claims against the insured, clear and undisputed terms, and an unconditional offer. There are four Stowers demands, or four demands that they are alleging are Stowers demands in this case. And all of them fall short of one of those three prerequisites, if not multiple. But I want to just focus on one, because it's the one fatal defect that's true for all four demands. And that is, none of them promise to release the CRC claims. And our contention is that without a release of the CRC claims, there is no full release of the claims against the insured. What's required is a release that does not subject the insured to further liability, to the risk of further liability. Am I right, this is Trinity Universal, essentially? Well, I- That the insured's gotta be fully free. Yes, your honor, and I would say it's also Danner. Okay. And in fact, I would say that- But wasn't that issue given to the jury? In other words, I can't pronounce the lawyer's name, but you're a lawyer. Odintel, Odintel? Old Nettle, I think. Old Nettle, right? He had, the jury had in front of it the letter that he said that essentially says, don't worry about the indemnity. And then in closing, both sides were free to argue, this was a big monkey wrench or it's not. And so the jury had this. I'd like to respond to that in two different ways. Yeah, yeah. First, with respect to Old Nettle's testimony, that is his testimony. He did think that we would ultimately prevail on the indemnity claim. But there was still a risk that we wouldn't prevail. And as Redeker testified, this is the same lawyer who thought that there wouldn't be any damages against the insured in the lawsuit. And we know there was a more than $50 million- The jury fully had that argument. This is the monkey wrench. Yeah, okay. Yes, Your Honor. So that's the second thing I want to respond to. No, the jury did not have that argument, and that's our second problem. Even if there was a legal duty owed here, we don't believe it was properly submitted to the jury. Because what happened was the jury was told repeatedly that they could not consider the CRC claims under the trial court's instructions. And to give some context, to give some context for that, please interrupt me if I talk fast, so please feel free to interrupt if you have questions. To give some context for that, the trial court proposed a jury charge that said, here are some factors you can consider in determining whether or not it was reasonable for Westport not to settle. And one of them was, as Texas law requires, a full release of the claims against the insured. Well, Penn objected to that at the charge conference and says, no, if you leave it like that, they're going to argue that the CRC claims were one of the reasons they didn't settle, and we think that's an improper argument. So we think you should change it to say, full release of High Court's claims against the insured, and ultimately the trial court agreed and did that and made that change. And isn't that our case, Wade Welch? I'm sure you're familiar with him. Didn't we say that a Stowers demand can still exist even if there are collateral matters, outstanding, other exposure, do you know the case I'm referring to? One Beacon, is that? Yes, One Beacon versus Wade Welch. I was thinking of it as a thing. Yeah. So, let me finish that. Yeah, okay. And then come back if that's all right. Yeah, that's fine. Okay, because I want to talk about Danner versus One Beacon. Okay. But first, just to finish that last thought, so then during closing, and you could argue, you could look at the jury charge, and it's not an exclusive list. You could say, well, they could have still considered CRC even though this one factor kind of makes it seem like it's not what you're considering. But the problem with that is that during closing arguments, they came in and they point to this jury instruction multiple times and say, hey, this is telling you that those other CRC claims, that was an irrelevant slide show. And look at the instruction. The instruction's going to tell you all that matters is Highport's claims. Did it release Highport's claims? So for them to come back now and argue on appeal, well, the jury could have considered the CRC claims and probably did. It's the exact opposite of what they told the jury that the jury charge meant at trial. And it's not like Westport could object to that because that's an accurate reflection of what the trial court did rule. And while Westport could argue in its closing, as you point out, the CRC evidence, and had to, it's a big part of its case. What it couldn't do is undo the harm of the argument that was made that, hey, this is the court's jury instruction, and look, it says don't consider CRC. Westport can't come back and conflict that because that's what the trial court did, in fact, rule. Turning to- If you're right, though, I mean, another argument, again, is just if I'm, is a very intricate case, but the CRC claim wasn't really even on the table for, during the first demands? No, we disagree completely. Yeah. The CRC claim was first asserted in a demand letter in February 2009. And a demand letter is sufficient under Texas law to make it relevant. And the way we know that, one of the cases we can look at is the Texas Supreme Court's opinion in Bleecker, where none, where the, the Texas Supreme Court held in that case that a demand did not trigger a source duty because it was not a full release. Even though none of the claims at issue had been asserted formally in a lawsuit yet. They had all only been asserted in a demand letter, just like the indemnity claim was asserted in a demand letter here. All right, let me ask you two things. One, it's always notable to me when the summary of the argument appears on page 37 of the brief, which means that there's a whole lot of recitation in terms of the process, procedural history, and on and on and on. You know, to get to that, which has been one of the reasons I guess it's hard, drilling down exactly here. My question, one, I'm going to the second piece. Somewhere in there, I think in your briefing or whatever, you surmised that some issue was so clear that there should be a certification of a question to the Texas Supreme Court. That was at your, so I was trying to find it here in the brief, and just while I had you, Mike, wanted to understand what is the proposition you are making. I'm not saying I'm convinced that's the case, but I just want to make sure I understand the issue that you're saying could be possibly whatever teed up that needs an answer from the Texas Supreme Court. We actually think that all three of the big issues in this case are issues of first impression that could be certified to the Texas Supreme Court if the court was so inclined. The breach of contract claim seems to us to be one that this court could easily resolve because there's no question under Texas. Well, I guess that's my dissonance because you argue powerfully in the brief, and here, you know, it's sort of straight on, we ought to resolve it, and so I'm trying to reconcile that notion with saying, you know, it's not as clear, and there needs to be this answer. That's why I'm asking this question. Or was that, I mean... Our contention is not so much that it's not as clear as that there are some issues of first impression that just haven't been decided yet. So this court could make its guess at what the Texas Supreme Court could do, or it could certify the question. Well, I guess in just preparing for it, I hadn't really embraced this as eerie guesses, you know, entrenched here, really hadn't. I mean, you know, both sides go tooth and toenail over all these issues, et cetera, and it never sort of struck me that somehow making an eerie guess, as opposed to just having to read the case as applied, decided, decided, and so that's why I'm trying to hone in on which one of these. Is it the issue of whether or not, well, shouldn't be, you know, negligence is an offense to breach a contract? It didn't sound like that, but I wasn't ready for you to say all three issues. I mean, is it the stower's duty? I know that's not your principal argument, but I'm just trying to be clear. If not three, but one, which is the one, without abandoning your argument, you say maybe one at the Texas Supreme Court would make more clear. Do you understand my question? I do, Your Honor, and my time is up, but may I respond? I understand, but you're on my time now, you know. If you were inclined to certify any questions and just going to certify one, our suggestion would be to certify the no-duty argument, whether or not a duty was triggered by these demands. Okay, and then the follow-up is just to say, you know, in the brief, even in your argument, you said, well, yeah, because you say consistently no court has ever before held that one insurer's stowers negligence gives another insurer's contractual obligation to be insured. Doing so for the first time here sets a harmful precedent that encourages insurers to leave the insured exposed, blah, blah, blah. So, I mean, you teed it up as if, you know, this was sort of exponential in the case. So, when you come back on rebuttal, you can just pound down. But I guess the latter part, you said something about the jury instruction was changed, and my question was going to be what precipitated the change. Yeah, when you're arguing about the stowers man, you say the trial court erred by ruling otherwise and, quote, changing the jury's charge, enabling Penn to tell the jury that the language of the charge limited their analysis to release of High Court's claims against the IE not CRT claim. So, my question is, what precipitated, quote, the change? Did you submit a jury charge that correctly from your viewpoint articulated it? And with saying change, what was the precipitation or the catalyst for the change that the court adopted? Yes, Your Honor. So, it started with the court's original proposed charge, which we did not have an objection to in this context. But Penn did object. Penn said, this charge says, is it a full release of the claims against the insured? And if you let it say that, they're going to get up there and argue, well, we were thinking about the CRC indemnity claims. And Penn's position was that was an improper argument. So, the jury charge should be changed. Instead of saying a full release of the claims against the insured, it should be changed to say a full release of High Court's claims against the insured. And the trial court agreed and made that change. And that's what they're pointing to in their closing arguments. Okay. All right. That's helpful. Okay. Thank you. You've preserved your full rebuttal time. All right. Mr. Engebrein. May it please the court. So, what do you do when you litigated eight years and lost every single thing you could do? Lost the jury. Lost the judge. Lost the Court of Appeals. Lost the Supreme Court. And then you come in here and you litigate for eight years and you lose the complete jury verdict and you lose three judges on the way. You raise arguments that really miss the mark when you look at the case specifically. This is a jury verdict. How do you overturn a jury verdict when all the inferences say you were guilty? How do you do that? You raise a bunch of legal arguments that actually don't exactly make the mark. Well, that's an interesting start. But we've got an amicus brief that says this implicates more than just a very angry, stubborn litigant. And her final comment was, well, of course you got a jury verdict because the jury got told they couldn't consider what meant this not to be full and final. That IA was still exposed. Westport's really worried about their exposure to CRC and therefore it wasn't full and final. Okay. So, there are so many answers to that. Okay. There are. Well, give me your best one answer legally and then the best answer factually. Let me give you two answers. Well, why don't you give me the answer I'm asking for. What is the best Texas law case that says that even if it's not full and final, IA is not completely out of the woods, there's still a valid Stowers verdict? Right. That's a series of cases. It's Soriano to start. This isn't a multiple claimant case. I don't think it is. Well, it's Soriano. It's Sitko, you're on the panel of. It's one beacon and then it's the last ACE case, American Guaranteed. Always helps my brain if you just say this is the closest alignment case. In other words, you do or don't dispute factually that CRC still, there was still exposure to CRC. Not in the first two. And then, can we go into the second argument and then I'm going to come back to this if you want. Yeah. The first two, there's not any claim. There's no indemnity claim. And the second, the third and fourth, this argument is utterly irrelevant to that. It's utterly irrelevant because the jury is faced with a post mediation situation where they have a mediation proposal to release all claims, tax title, dealer prep, indemnity, cross claims, counter claims, all the defendants, everybody in that one. And then the parties negotiated from that and you look at the correspondence in the record and they're going, when they responded to the 3.6 mediators proposal which said everybody's going to walk away and the parties, the defendants are going, okay, yes, as they're coming up with their proposals to counter the 3.6, they used the terms walk away. They used the term global settlement. So, the jury, and I know all of you respect the jury process and nobody respects it more than me. One of my lead articles is asking for more jury trials and admiralty. Right, but I thought on the 3.6 demand, I thought other defendants weren't agreeing to it. That Westport was saying take it, take it. There, the point was that the last, let's just focus on the last one because we only need one. I know, but that's why it helps me if you tell me which. Instead of moving from one to the other and if I say there's a problem with one, you say let's focus on another. Which is the demand that most, under Texas law, was the most final and unconditional that they still refused? All right, the fourth hour's demand. That's the one, okay. The fourth hour's demand is one where the defendants have already countered and two of the other defendants have said we'll pay 400 and they even suggested they might pay more. Okay. And in this particular case, Insurance Alliance can pay the difference and the case is over and the other defendants have agreed in their statements if we do this, this is global. We're all going to release each other. They've said that in the record. I thought the response to the fourth, though, was it was in excess of the Westport amount. No, no. When there's 400 each, that makes it 2.8. Oh, the fourth one was still 2.8? Okay, my mistake. It would be 2.8 for Insurance Alliance. Well within the amount. Particularly because this is the classic case I've told my teaching marine insurance for 46 years. It's a classic case, the classic case I try to teach the students and I know we've got a lot of professors on this panel and so the point is I teach the students when the train is leaving the station, you got to get on it before it leaves the station. This is a case, 2 million, 2.2 million, 3.6 million, then it's 13 million. And so, actually demand of 14.99 and so the thing is that the jury saw this. The jury knew this. And what about her comments that the jury was told they shouldn't consider any exposure owed to CRC? See, that's irrelevant to this last demand. So that's the answer. It's irrelevant to the fourth demand. That's one answer. As I said, there are multiple answers. It's certainly irrelevant to that because the jury had a perfectly legitimate inference and you know what inferences are and you know what jury verdicts are and I don't have to preach to you about jury verdicts and inferences. The jury could easily find and did that none of that was an issue here because they'd all said they were going to walk away, global settlement and all they had to do was meet the fact that the plaintiff kept saying 3.6, 3.6, 3.6 and that's all they had to do. But the other answer is, the other answer to this is that this is actually what I believe this is Texas law. I don't believe when you read Soriano, when you read Sitko, when you read One Beacon and when you read Judge Jones' latest American Guarantee, I think that- There's a little tension between American Guarantee and what's, you'll know it because you practice in this area. Patterson? Well, yeah, I mean that's what- What do we do with a case like Patterson? Well, the court said that you've got to look at the history, that's an older case and the history of the decisions has said what you just, what you have to have is a demand that is a demand that is against one defendant and takes that defendant out. Okay. It doesn't mean- Is that what Judge Jones said in American Guarantee? Well, yeah, because what happened in, what she said that was better in American Guarantee and I love this analysis, is that what you have to do is you have to look at what they said contemporaneously. You know what they said in that case? That case was a conditional demand. That case was really conditional and if you listen to the argument in that, and I listen to all the arguments, you listen to the argument in that case and Ace's lawyer got up there and he's going on and on and on about how this is conditional, conditional, conditional because it didn't break it down among the beneficiaries. It had minors in there. How was that going to be addressed? That has to be court approved. Suppose the court said, no, it's got to be more to these people and less to these because the court has that authority with the minor section. Just give me, what's the rule of law you draw from American Guarantee? The rule of law was, you know what Ace said in that? And this is the rule of law. That wasn't important to them. They thought they were going to win on the merits. So the fact that it was- We go back and look at what was said contemporaneously and how do you pronounce the lawyer's name? Udintelli? Oh, Old Medal. Very assertive, aggressive guy. You look at and what they have done and you have to give them credit. I mean, you know, they've lost everything. You have to give them credit. What they did was they did, they took and did not cite all the contemporaneous records are in, in the, in the record. All the contemporaneous evidence is in there from their adjuster, Redeker. And there is never, in any of the four, there's never one mention at the time, not one, of these third party claims. Oh, I'm scared of these third party claims. And the reason that he rejected and I said, let's talk the fourth, Stowers demand. Let's do that. The reason they rejected that, the reason that, that they rejected that demand and it was Redeker who rejected it when the other defendants, oh, we'll pay more, we'll pay more. No, because they've stood at 3.6 and I'm not going to bid against myself. So what I'm going to do is I am going to risk the money of either the insured or the excess carrier. I'm going to risk their money out of my hubris because I am not going to bid against that 3.6. I would rather have the 13 million. Redeker, I read the trial record. Redeker, remind me just now, who, who's he with? He's the adjuster for Westport. He's the adjuster. Okay. I see. Okay. Go ahead. No. Yeah. And so this is hubris on their part. You wonder why the jury finds against them on everything? The jury finds against them because their excuses that they used were not Stowers. These are the same types of things that occurred in the original Stowers case. When you're gambling with somebody else's money, that's exactly what they did here. There's no contemporaneous mention. After the fact— I understand the American guarantee. Remind me again, are they bringing up an instructional error argument against these? And if so— Not in that case. Okay. No, in our case. So the early demands. I see what you've done with the fourth. I'm understanding it better factually. But do you have any comment about why the instruction telling the jury just focus on Hightower's demand? I think that's Texas law under Soriano and the like. So you're back on Soriano. Okay. That's actually not exactly what the instruction says. It doesn't say that. And this is why they spent six pages of argument to the jury saying 9874 to 9880 of the record. I know you love reading the record. Well, who doesn't? We all do. That's what we do. I mean, that's our job. So Westport argued about the CRC indemnity claim against Insurance Alliance, cited the testimony that a reasonable insurer must consider it, argued that they shouldn't have to pay, have paid $2 million and then like Michael Corleone be brought back in to the case after paying $2 million. That's exactly the argument that they're making here. They made that argument to the jury. Okay. They said it all. I'm going to interrupt you and I know I do too much, but your time's out and we still, let's say the verdict stands because we have a big chunk of the rest of the case. Even if that's right, the issue the amicus brief is trying to engage with is fine, but you still have to pay in chase as you put it in your brief. And there's some, you know, the answer to that is very, very, very simple. You know, one of the things I really commend you as a... No, just answer it. Don't commend me. Just answer. ...is to read Judge Johnson's tome that she wrote. You know, the one thing you know about Judge Johnson is that she never cheated you. It's an 84 page opinion. And that talks about this very issue in this case that the amicus brief discusses. This is a case that the only reason there's not a pay in chase is because of the hubris again. We paid within six days of the demand on us. There is only in this record that's applicable here. There's a breach of duty. Why are you entitled to more than 380? Why are we entitled to more? Yeah. You're talking about money. I don't understand the question. We didn't pay more. Well, you're not disputing. You're not cross appealing the breach. So you breached. Both insurers, to my eye, breached as to this insurer. Yes. But you're walking away scot-free. And yet anything over 5 million was yours to pay. It was ours to pay until there was a Stowers violation. The Stowers violation five years before. But opposing counsel says, well, the Stowers violation gets your 380 back. It does. But why don't you have to become a subrogee, get assigned to you the Stowers claim, then you go after the full extra 7 million? And that's, Judge Johnson said, Stowers is much more direct than that. That's her quote in her opinion. I guess I'm going to ask you not to focus on Johnson. Let's focus on what the district court did here. Was this a break in causation? What's the basis? Yes. There are actually two answers. Well, it's more than anything, it is the lack of causation because our breach was the fact that the only breach that's before you, there's only one that's before you, is the fact that on June 6th of 2016, 380,000 was owed. And it took us a week to pay it. And we paid it in a week. And it's the only breach. So what damages did we cause? I thought you breached both duty to defend and the duty to indemnify. Well, they did. That was for a couple months. And the duty a couple months before, five years later, and they continued to defend, didn't tender it to us. They just continued. They didn't even say you take over the defense. So what are the damages for that? There are none. There are no damages from the other. Where in the record did this district court make a damages calculation if that's the answer? They're just no impact, it's mooted. Where do we find that? Well, he said that in his answer to the motion to overturn the judgment. He said there just simply was nothing caused by it. No impact. And what's your best case out of Texas that that's what can happen when an excess carrier, and in this case, it's almost always going to be an excess carrier, is trying to assert the insured stowers rights? What's the best case where courts have allowed this sequence and then ultimately just say no harm, no foul? This is a first impression. It is a first impression, but it's a case where there are no damages. They're just simply, you know, how were their damages when five years before they caused everything and when our only breach before you, our only breach before you, is we didn't pay the $380,000 for a week. When you keep limiting to $380,000, let's imagine Westport's out of the picture. The testimony was... You would have to pay the full $13,000 excess verdict, right? Yes, and we said we would. We said we would. The only reason we didn't is because of their hubris. Again, they put up the bond and the bond is paid, and once that bond is paid and the court calculated the amount that was left after the bond, we stepped up and paid it in a week. And the testimony... Those are hypothetical then. Let's say they hadn't put up the bond. Then what happens? We'd have paid it. You would have paid it. Yes, the testimony is in the record. It's the testimony of Boyd Wright on page 1929 of the record. He said, Westport could have simply tendered the policy limits once the final judgment came down, told Insurance Alliance the remainder of years, then certainly Insurance Alliance would have turned to us and we would have taken care of the judgment. That's the only evidence. That's how it should work. And that is how it should work. And the only reason that we're talking about any of this is because in this particular situation, Westport was going to chase that from here to eternity. And they've chased it now for 16 years, lost to two juries, three judges below, all the way up to the Texas Supreme Court in the first... The word we take away is hubris. That's the refrain here. Pardon me? Hubris. That's the key word here. That is a key word here. Because they could have settled this case for $2 million. They knew it. Stowers is the last case in my casebook on marine insurance for a reason. It is the hallmark of Texas insurance law. And they violated Stowers. They're trying to get away with it. We respectfully pray that this court affirm. There was some inquiry about certifying. And then on refinement, there was inquiry about certification. And on refinement, the point was to certify as to, I think of it as a trini-universal question, which is, were these demands full and unconditional? And your answer to that would be, your casebook already gives us the answer or what? The answer is very simple. If that's irrelevant to the last two demands, the last, the third and fourth, it's utterly irrelevant because all the reasonable inference for the jury was that this is a walk away. That's the words of the defendants. This is a walk away. It's a global settlement. That's the words of the defendants. And so that's potentially relevant to one and two. I believe that their argument is incorrect. It is not an issue to three and four, because three and four were global settlements. No indemnity. Thank you, Your Honor. All right. Thank you. All right. Ms. Andrews, you have your, excuse me, your rebuttal. Thank you, Your Honor. I'd like to begin by answering a question that I got in my opening, but didn't get around to answering, which was about one beacon. So I think that the question of whether or not the CRC claims had to be released for a full release really comes down to a question of, is this case more like this court's opinion in Danner? Or is this case more like this court's opinion in one beacon? Our answer is that it's clearly more like the case in Danner, because Danner involved a very similar factual situation in terms of indemnity, and one beacon didn't involve indemnity at all. So in Danner, the plaintiff in the underlying suit sued both the insureds and a railroad company, seeking to recover for the same injury from both of them. And the railroad company inserted an indemnity claim against the insureds. This court held that a demand offer that wouldn't have released the railroad company was not a full release because it left the insureds subject to further liability for the same claim. The same claim that they're trying to release in the settlement, they would have still been subject to potential liability through the indemnity claim. They also pointed out that even if the indemnity claim isn't successful, it still costs you money to defend and whatnot. And really, when you settle a case, what you're buying is peace. What you're buying is certainty. So even if you might not have lost the indemnity claim, the fact that there's risk matters in a settlement negotiation. One beacon, on the other hand, didn't involve any indemnity claims. In that case, the plaintiff in the underlying suit sued the insured, a law firm, and also sued a lawyer who had worked for the law firm who was named as an additional insured. This court held that a demand in that case that would have released the law firm but not the lawyer was a full release because it fully released the insured. The law firm. The fact that it didn't release this lawyer who's an additional insured may mean that the carriers might be subject to future liability, but it doesn't leave the insured at risk. The insured has been fully released from the claims in the case. What about the two responses at least? And he had several. One was American Guarantee. The jury's entitled to look at what the contemporaneous discussions were. And if the discussion didn't really, no one was resisting these deals because of this indemnity. Do you have an answer to that? So I think that's not what's in the record. Every single witness who testified at trial talked about the CRC claim and how important, well, not every single, almost every single witness who testified at trial talked about the CRC claims and the role they played in the settlement negotiations. Multiple witnesses testified as to every single settlement demand. Yes, we were concerned in that case about a full release and a release of the CRC. And what about the factually the third and the fourth being in Globo walkaway type of offers? I also would, this record also does not support that. To be clear, what the third and the fourth demands are, the only evidence of what the terms of those demands are in the record is an email where defense counsel says, the third one, the defense counsel says, they rejected our offer and they've counted for 3.6. No terms, nothing. The second one, the fourth one is an email, there is a letter in which one of the defense counsel again says, they're not even going to respond to our offer. They're sticking with 3.6. Nothing in there is a clear and undisputed release of all the claims that CRC has asserted or of all the party's claims. And as the court pointed out in its earlier questioning, the other defendants never agreed to those terms, never agreed to any of those settlements. So even if you're going to impute the mediator's terms, and we dispute that, there's no evidence that the mediator's term should be imputed into these third and fourth offers, which are just a counter or a refusal to respond to anything less than 3.6 million. But even if you impute the mediator's terms from earlier in the year and say, well, we're going to assume it would be a global release of all parties, that doesn't work when not all parties have agreed. And then they come back with this, well, you could have filled the gap, you could have paid the whole thing, and then we can just assume the other parties would have agreed to release their claims. Texas law doesn't allow that. The Texas Supreme Court has held that not only if it has to be unconditional, and if it's conditioned on the acceptance of other parties, not only does the other party have to accept, that acceptance also has to be communicated to the Stowers defendants. Neither of those things happened here. None of the defendants accepted. Well, if Texas law is clear about that, why are you saying certify? What is the specific certification? What's the question that's decisive to this case that's undecided in Texas law? We think the Texas Supreme Court hasn't decided whether or not a Stowers duty is triggered by a settlement to man that does not release the plaintiff's claims against a third party who asserts indemnity against the injured. And in 17 seconds, he said, oh, you should have refused to put the bond money up, that that was your mistake. So I'd like to respond to that in a couple of ways. One, us posting the bond doesn't relieve them of their duty to pay out under the excess policy. The trial court held on summary judgment, they had a duty to pay and breached it. Whether or not we had, there was a bond in place, they still had to indemnify after the bond and they didn't do it. And that's the summary judgment holding that isn't appealed here. Second of all, this theory that, well, we paid the 380K within a week, we're not complaining about the 380K they paid. We're complaining about the $7.7 million in excess that they didn't pay, ever. So I don't know how they can come back and say, well, yeah, we would have paid if you hadn't paid first. Well, first of all, they still had a duty to indemnify whether we paid or not. Second of all, I don't think there's any credibility of the argument that they would have paid. And I see now that my time is up, so I will. All right. Well, thank you, Senator, for your responses to the court's questions and briefing. Thanks, counsel on both sides. The briefs are robust and we'll work our way back through them. It's helpful to have the pinpoints to the record because we'll definitely have to pay attention to that. But in any event, this completes the oral argument session for the panel for this morning. We'll stand in recess until 9 a.m. tomorrow.